UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

CHARLES ELLIS BABIN, JR.          *          CIVIL ACTION NO. 14-3312

VERSUS                                        *          JUDGE DOHERTY

COMMISSIONER OF SOCIAL        *          MAGISTRATE JUDGE WHITEHURST
SECURITY

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and

Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Charles Ellis

Babin, Jr., born in 1968, filed an application for a period of disability and disability

insurance benefits on March 27, 2012, alleging disability as of May 13, 2011, due to neck

and back pain, headaches, anxiety and insomnia.

## I. STANDARD OF REVIEW

The Court limits its review of a denial of disability insurance benefits to two

issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the

Secretary's decision is supported by substantial evidence on the record as a whole.

*Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827,

829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420,

1422, 28 L.Ed.2d 842 (1971).  Substantial evidence is defined as more than a mere

scintilla.  *Id*., 402 U.S. at 401, 91 S.Ct. at 1427.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder.  *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.  Id. at 393.

## II. BURDEN OF PROOF

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant.  *Cook*, 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.  *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015).  The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant

from doing past relevant work; and (5) whether the impairment prevents the claimant

from performing any other substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).

The burden of proof is on the claimant at the first four steps.  *Leggett v. Chater*, 67

F.3d 558, 564 (5th Cir. 1995).  The burden of proof shifts to the Commissioner at the fifth

step to establish the existence of other available substantial gainful employment that a

claimant can perform.  *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987).  If the

Commissioner identifies such employment, the burden shifts back to the claimant to

prove that he could not perform the alternative work identified.  *Id*. at 1302.  Throughout

the process, the ultimate burden of establishing disability remains with the claimant.

*Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

### III. ANALYSIS

After a review of the entire administrative record and the briefs filed by the parties,

and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record

to support the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and

conclusions regarding claimant's disability is supported by substantial evidence, based on

the following:

### A. Medical Evidence

Claimant had a history of neck and back problems.  On May 15, 2011, he presented at Christus St. Elizabeth Hospital with complaints of back pain after a motor vehicle accident.  (Tr. 158-96).  X-rays were normal.  (Tr. 166).  The assessment was sprain/strain of the thoracic and lumbar spine.  (Tr. 165).

An MRI of the lumbar spine dated May 19, 2011, showed mild degenerative disc and facet changes throughout the spine, without nerve root compromise or spinal canal stenosis.  (Tr. 189).  Claimant was treated with epidural steroid injections ("ESIs") and physical therapy.  (Tr. 162, 177, 192).

Dr. Erwin Lo, a neurosurgeon, saw claimant on May 31, 2011, for complaints of pain and muscle spasm in the back.  (Tr. 197).  Dr. Lo noted that claimant had previously undergone a two-level neck surgery and carpal tunnel release.  Dr. Lo's diagnosis was probable severe lumbar strain, possibly with intermittent radiculopathy.  (Tr. 198).  He opined that surgical intervention was not required, and recommended physical therapy and electrodiagnostic studies.

Dr. Sujin Yu conducted EMG/NCS studies, which revealed evidence of a peripheral neuropathy of the bilateral upper extremities, affecting the sensory and motor components of the nerves predominately affecting the axons, and subtle L4-5 radiculopathy changes on the right.  (Tr. 199-203).  Dr. Yu noted that muscle spasms in

the lumbar paraspinal muscles might be masking the acute radiculopathy changes.  (Tr. 199).

At a followup visit on September 8, 2011, Dr. Lo noted that claimant had done well after his ESI, and had full strength in his legs.  (Tr. 205).  He released claimant to full duty without restrictions.

On September 30, 2011, claimant was admitted to Opelousas General Hospital with pneumonia.  (Tr. 208-33).  During admission, he was also diagnosed with drug abuse with Soma and Lortab, and chronic lumbar pain.  (Tr. 215-20).  An MRI dated October 3, 2011, showed L3-4 degenerative disc changes with mild annular bulging, a small broad-based left foraminal/lateral disc protrusion with a subtle annular fissure; mild annular bulging at L4-5 and L5-S1, and extensive paraspinal musculature T2 hyperintensity, which appeared most consistent with a severe muscle strain.  (Tr. 232).

On October 20, 2011, claimant was treated by Dr. George Williams, an orthopedic surgeon, for low back pain, complaining that conservative treatment had no lasting benefit.  (Tr. 243).  On examination, claimant moved around the office normally.  (Tr. 244).  Physical examination was normal.  (Tr. 245).

Dr. Williams' diagnoses were lumbar back pain, lumbar herniated nucleus pulposus and lumbar spondylosis.  He prescribed aggressive therapy, NSAIDS, Lortab and Vimovo.  (Tr. 246).

On November 10, 2011, claimant reported persistent muscle spasms to the lumbar region.  (Tr. 247).  Dr. Williams recommended conservative care and activities, and referred him to Dr. David Weir for further evaluation.

Claimant was seen initially at Southwest Neuroscience Center by C. Andrus, APRN-FNP, on January 19, 2012.  (Tr. 236-241).  Claimant reported continued spasms in the lumbar spine alternating from right to left at times, and right-sided neck pain with spasm, stiffness and burning.  On examination, he had limited range of motion ("ROM") of the cervical spine with pain bilaterally and positive leg raises on the left, but more tenderness of the right paraspinal muscles.  (Tr. 237).  The impression was low back pain with radiation to the paraspinal muscles with spasm, and neck pain with moderate spasm and intermittent numbness.

On March 6, 2012, Dr. Weir stated that EMG/NCS studies of the bilateral lower extremities revealed no evidence of lumbar radiculopathy.  (Tr. 238).  He recommended chiropractic therapy, Naprosyn, Flexeril, and Lortab as needed for pain.  (Tr. 239).  He stated that if chiropractic therapy was unsuccessful, then he would consider Botox injection, ESIs and a lumbar myelogram.

Claimant saw Dr. Steve Morris, III on June 7, 2011, for chronic neck and lower back pain.  (Tr. 303).  His pain scale was 2/10 on medications and 10/0 without.  He was stable on his current regimen and had an improved quality of life.  He was able to work and carry out his normal activities of daily living.

Claimant stated that he did not want surgery, and would prefer to be medically managed.  Dr. Morris found that claimant had good analgesic control for his pain. Claimant reported no adverse events to due medications and demonstrated a clear affect with no aberrant behavior.

On examination, claimant had decreased neck flexion, point tenderness along the paravertebral borders, tenderness along the posterior cervical and mid-vertebral area, decreased lateral rotation, muscle rigidity, and spasms in the sternocleidomastoid muscle, trapezius and platymus.  (Tr. 304-05).  Claimant also had mild scoliosis and decreased ROM in the thoracic spine, marked limitation in the lumbosacral spine, and mild muscle weakness and atrophy.  (Tr. 305).

Dr. Morris' assessment was posterolateral herniation at L5-S1 with contact to the right S1 nerve root; post-operative changes with bulging at C6-7; status-post anterior discectomy and interbody fusion with allograft at C4-5, C5-6 and C6-7 in March 2006; right cervical radiculopathy; herniated disc with osteophytosis at C4-5 and C5-6; cervical muscle spasticity; right carpal tunnel syndrome with previous repair in January 2005, anxiety, and insomnia.  (Tr. 305).  He recommended passive and active ROM exercises and hydrotherapy, and considered a TENS unit, trigger point injections and K-laser therapy.  (Tr. 305-06).  He prescribed Roxicodone, Hydrocodone, Soma and Xanax, and recommended monthly followup.  (Tr. 306).

On December 19, 2012, claimant denied any significant changes.  (Tr. 316).  His pain scale on medications was 2/10, and off medications was 10/0.  He had good analgesic control for his pain, an improved ability to carry out activities of daily living, reported no adverse events due to medications, and demonstrated a clear affect with no aberrant behavior.  (Tr. 315).  His physical exam was unchanged.  (Tr. 316-17).

Dr. Morris opined that claimant's current medical problems had "made him totally disabled."  (Tr. 317).  Ironically, Dr. Morris had previously advised claimant on several occasions that he "[could] not offer an opinion as to long-term or short-term disability," and that he would "defer any opinion on long-term disability" to orthopedic, rheumatology and neurosurgery specialists.  (Tr. 271, 275-76, 280, 296, 300-01).

On July 22, 2013, claimant complained of chronic neck and lower back pain, as well as right arm and wrist pain.  (Tr. 325).  His pain scale was 2/10 on medications and 10/0 off meds.  On examination, claimant's right upper extremity had some mild atrophy, + Tinel's and + Phalen's.  (Tr. 327).  Dr. Morris opined that claimant's current medical problems had made him "totally disabled."

On June 28, 2012, Dr. A. Edward Dean prepared a Residual Functional Capacity ("RFC") Assessment for Disability Determination Services ("DDS").  (Tr. 43-44).  He opined that claimant could lift/carry 20 pounds occasionally and less than 10 pounds frequently, sit about six out of eight hours, and stand/walk four out of eight hours.  (Tr.

44).  His push/pull ability was unlimited, other than his restrictions as to lifting and

carrying.  He had no other limitations.

Cheryl Marsiglia, Ph.D., performed a Psychiatric Review Technique ("PRT") for

DDS on July 3, 2012.  (Tr. 41-42).  She determined that claimant had mild restriction of

activities of daily living; mild difficulties in maintaining social functioning; mild

difficulties in maintaining concentration, persistence or pace, and one or two repeated

episodes of decompensation, each of extended duration.  (Tr. 42).  She concluded that

claimant's anxiety appeared to be well-managed and non-severe.

In a Medical Source Statement of Ability to do Work-Related Activities dated

August 6, 2013, Dr. Morris opined that claimant could lift/carry less than 10 pounds; had

to periodically alternate between standing/walking and sitting; was limited in overhead

reaching, handling and fingering on the right, and should have limited exposure to

vibration, humidity/wetness and hazards such as machinery and heights.  (Tr. 330-334).

### B. Hearing Testimony

At the hearing on September 11, 2013, claimant was 45 years old.  (Tr. 25).  He

was 5 feet 11 inches tall, and weighed around 175 pounds.  He was a high-school

graduate, and did one year of vocational technical training in non-destructive testing.  (Tr.

26).

Claimant had 25 years of experience as a welding inspector.  He had last worked

on May 12, 2011.  At the time, he was doing quality assurance and quality control work at

Huntsman Chemical in Port Arthur, Texas, when he was involved in a hit and run accident. (Tr. 27).

Regarding complaints, claimant testified to having a three-level neck fusion, herniated lumbar disc, leg numbness, carpal tunnel surgery, problems sleeping, depression, problems concentrating and memory loss. (Tr. 27-30). He reported that he took a nap at 1:00 p.m. for about two hours daily. (Tr. 29). He complained that his medications caused drowsiness, aggravation, memory loss, concentration problems, diarrhea, constipation and insomnia. (Tr. 27). He also reported that he did not like to be around crowds. (Tr. 28).

As to limitations, claimant reported that he could sit and stand for five to 10 minutes, and lift less than a gallon of milk. (Tr. 28). He stated that he could walk about 20 yards. (Tr. 27-28).

Regarding activities, claimant testified that he did not drive, shop, or perform any household chores. (Tr. 26, 28). However, in his Function Report dated April 24, 2012, he stated that he attended to his personal care, did laundry, light housekeeping, prepared his own meals, went outside four to five times a week, managed his bills and shopped, watched TV, read daily, talked on the phone with others two to three times a day, traveled alone, and attended sports events.[1] (Tr. 137-40). He also stated in the report that he did

---

[1]Many courts, including the Fifth Circuit, have accepted television viewing, reading a newspaper, driving a car and speaking on the telephone as valid evidence that the plaintiff can concentrate, usually when other relevant facts accompany it and the RFC limits the plaintiff to simple tasks. *See, e.g., Pratt v. Barnhart*, 158 F. App'x. 643, 644-45 (5th Cir. 2005) (noting that

not drive because he had been given a DUI due to medications in his system.  (Tr. 139).

Beverly K. Majors, the vocational expert ("VE"), classified claimant's work as a non-destructive tester as medium with a Specific Vocational Preparation ("SVP") of six. (Tr. 33).  The ALJ posed a hypothetical in which he asked the VE to assume a 45-year-old claimant with 12 years of education, who had the exertional capacity to perform sedentary work with limitations to simple, routine repetitive tasks, and to alternate sitting for 30 minutes and standing for a short period before returning to a seated position.  (Tr. 34).  In response, Ms. Majors testified that he could not return to his past work, but could work as a sedentary information clerk, of which there were 84,286 jobs nationally and 1,211 statewide; sedentary general office clerk, of which there were 97,252 positions nationally and 1,229 statewide, and bookkeeping clerk, of which there were 69,730 positions nationally and 968 statewide.  (Tr. 34).

Claimant's attorney changed the hypothetical to a assume a claimant who was limited to lifting or carrying less than 10 pounds occasionally and frequently; could sit less than two hours in an eight-hour day and had to repeatedly change positions; had some limited ability for reaching overhead; had limitations in fine manipulation due to carpal tunnel syndrome, and was limited as to vibration, humidity, machine hazards and heights. (Tr. 35).  In response, the VE testified that he could not do his past work or any other

---

watching television "suggest[ed] some ability to concentrate"); *Nace v. Comm'r of Soc. Sec.*, 2015 WL 1511055, at *26 (E.D. Mich. Mar. 25, 2015).

sedentary job because of the fine manipulation.  Additionally, when claimant's attorney

added issues with drowsiness, confusion, inability to concentration and focus, and

inability to stay on task for 20 percent of the day, Ms. Majors responded that he could not

work.  (Tr. 36).  Further, when asked whether a person could maintain employment if he

missed more than two days a month on a regular basis, she responded that no jobs would

be available.

### C. Argument

Claimant argues that: (1) the ALJ erred in failing to find that he was disabled and

entitled to benefits; (2) alternatively, the ALJ erred in failing to find that he was disabled

for a time and entitled to a closed period of disability benefits;[2] (3) the ALJ erred in

failing to give proper weight to the opinions of his treating physician, and (4) the ALJ

erred in finding that his testimony and complaints of pain were not credible.

First, claimant argues that he was totally disabled as of May 13, 2011, and that his

condition has deteriorated to such an extent that he is unable to work.  [rec. doc. 8, p. 4].

He claims that the ALJ erred in finding that the had the residual functional capacity

("RFC") to do any sedentary work.

---

[2]This issue was not briefed; thus, it will not be considered.  Additionally, claimant has not
complied with this Court's Social Security Scheduling Order's briefing requirements.  *See* Social
Security Scheduling Order [rec. doc. 6, ¶ I(2)(c) ("The argument shall be divided into sections
separately addressing each issue and shall set forth the contentions of plaintiff with respect to
each issue and the reasons therefor. Each contention must be supported by specific reference to
the portion of the record relied upon and by citations to statutes, regulations and cases supporting
plaintiff's position.").

The ALJ found that claimant had the RFC to perform sedentary work, alternating sitting every 30 minutes and standing for a short period before returning to sitting.  (Tr. 14).  While claimant argues that the record lacks any "concrete medical evidence" which indicates he could do any sedentary work, the medical records support the ALJ's opinion.  [rec. doc. 8, p. 5].

Claimant's treating neurosurgeon, Dr. Lo, released claimant to full duty without restrictions.  (Tr. 205).  Additionally, Dr. Dean opined that claimant could lift/carry 20 pounds occasionally, less than 10 pounds frequently, sit six out of eight hours, and stand/walk four out of eight hours.  (Tr. 17).  While the ALJ gave "some weight" to Dr. Dean's opinion, he found that evidence at the hearing level indicated that claimant was more limited than Dr. Dean had determined.  As the ALJ's RFC finding is supported by the medical evidence, and is even more limited than Dr. Dean had determined, it is entitled to deference.

Claimant also complains that the ALJ failed to give proper weight to the opinions of his treating physician, Dr. Morris.  It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  *Newton* v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling

weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455.

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. *Id*. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Id*. The treating physician's opinions are not conclusive. *Id*. The opinions may be assigned little or no weight when good cause  is shown. *Id*.; *citing Greenspan*, 38 F.3d at 237.

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Id.*; *Greenspan*, 38 F.3d at 237.

Here, the ALJ gave Dr. Morris' opinion that claimant was totally disabled "little weight," finding that the ultimate conclusion as to disability is reserved to the Commissioner.  (Tr. 17).  It is well established that "the ALJ has sole responsibility for determining a claimant's disability status."  (emphasis added). *Newton*, 209 F.3d at 455 (*citing Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Whether an impairment is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001);

*Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir.1991); *see Frank v. Barnhart*, 326 F.3d

618, 620 (5ᵗʰ Cir. 2003) ("[a]mong the opinions by treating doctors that have no special

significance are determinations that an applicant is 'disabled' or 'unable to work.'  20

C.F.R. § (3)(1).  These determinations are legal conclusions that the regulation describes

as 'reserved to the Commissioner.'").  Further, the ALJ is free to reject the opinion of any

expert when the evidence supports a contrary conclusion. *Id*.  Thus, it was within the

province of the ALJ to give less weight to Dr. Morris' opinion.

Additionally, while Dr. Morris opined that claimant's current medical problems

had "made him totally disabled," his own reports are internally inconsistent.  (Tr. 317).

On numerous occasions, Dr. Morris advised claimant that he "[could] not offer an opinion

as to long-term or short-term disability," and that he would "defer any opinion on long-

term disability" to orthopedic, rheumatology and neurosurgery specialists.  (Tr. 271, 275-

76, 280, 296, 300-01).  As Dr. Morris' finding of disability is "inconsistent with other

substantial evidence," the ALJ was free to reject it. *Newton*, 209 F.3d at 455.

Further, while claimant testified that his medications caused drowsiness,

aggravation, memory loss, concentration problems, diarrhea, constipation and insomnia.

(Tr. 27), he failed to report these side effects to his treating physician.  In fact, claimant

repeatedly informed Dr. Morris that and he had *no adverse effects* due to medications.

(emphasis added).  (Tr. 269, 273, 278, 283, 289, 294). *See Salazar v. Chater*, 1995 WL

783347, *5 (5th Cir. 1995) ("It is logical to assume that if the claimant were suffering

significantly from any side affects [sic], the claimant would have complained to his

treating physician, yet he has not done so."); *Wells v. Astrue*, 2009 WL 2447819, *4 n. 22

(M.D. La. Aug. 10, 2009).  Thus, this assertion lacks merit.

Claimant also argues that *Manuel v. Massanari*, 2002 WL 662944 (E.D. La. April

22, 2002), is "directly on point" with this case.  Besides the fact that this case is an

unpublished opinion which is not binding on this Court, the facts are distinguishable.[3]

There, the court noted that while the ALJ may reject a physician's opinion when the

evidence supports a contrary conclusion, the ALJ's conclusions lacked sufficient

evidentiary support.  *Id*. at *7.  Here, however, the record contains reports from other

physicians which support the ALJ's rejection of Dr. Morris' opinion, including Dr. Lo's,

Dr. Dean's and, significantly, the contradictory statements of Dr. Morris himself.  Thus,

this case is inapposite.

Next, claimant argues that the ALJ erred in assessing his credibility.  The ALJ

noted that while claimant had alleged disability beginning in May 2011, the records

indicated that he had received unemployment benefits in the fourth quarter of 2011, first-

fourth quarters of 2012, and the first quarter of 2013.  (Tr. 17).  In order to receive

unemployment benefits, an applicant must assert that he is ready, willing, and able to go

to work.  "Applications for unemployment and disability benefits are inherently

---

[3]Claimant also cites other cases which are from outside of this Circuit, some of which are unpublished.  [rec. doc. 8, pp. 8-9].  These cases are not binding on this Court and will not be considered.

inconsistent.  There is 'no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work.' "  *Redwine v. Astrue*, 2013 WL 3070850, *13 (E.D. La. June 17, 2013) (*quoting Workman v. Commissioner of Soc. Sec*., 105 F. App'x 794, 801-02 (6th Cir. 2004)).

Here, the ALJ found that claimant's statements in his worker's comp applications that he was ready, willing and able to work were inconsistent with his claim of disability, and reflected negatively upon his credibility.  (Tr. 17).  As stated above, it is well established that the ALJ has the primary responsibility for resolving conflicts in the evidence.  *Chambliss*, 269 F.3d at 522.  Thus, the ALJ's finding as to claimant's credibility is supported by the evidence.

Additionally, claimant's credibility is further undermined by the inconsistencies in his testimony and in his Function Report regarding his daily activities.  At the hearing, claimant testified that he did not drive, shop, or perform any household chores.  (Tr. 26-29).  However, in his Function Report, he stated that he attended to his personal care, did laundry, light housekeeping, prepared his own meals, managed his bills, shopped, talked on the phone with others two to three times a day, traveled alone, and attended sports events.  (Tr. 137-41).  It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status.  *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir.

1995); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).  Thus, the ALJ's finding as

to claimant's credibility is entitled to great deference.  *Newton*, 209 F.3d at 459.

Further, claimant argues that he is unable to engage in substantial gainful activity

on a day-to-day basis, citing *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986) [rec. doc.

8, p. 6].  However, since the issuance of its decision in *Watson v. Barnhart*, 288 F.3d 212

(5th Cir. 2002), the Fifth Circuit has determined that the Commissioner is not required to

make a specific finding regarding the claimant's ability to maintain employment in every

case.  *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Frank v. Barnhart*, 326

F.3d 618, 619 (5th Cir. 2003).  As the court stated in *Frank*:

> *Watson* requires a situation in which, by its nature, the claimant's physical
> ailment waxes and wanes in its manifestation of disabling symptoms.  For
> example, if [plaintiff] had alleged that her degenerative disc disease
> prevented her from maintaining employment because every number of
> weeks she lost movement in her legs, this would be relevant to the disability
> determination.  At bottom, *Watson* holds that in order to support a finding
> of disability, the claimant's intermittently recurring symptoms must be of
> sufficient frequency or severity to prevent the claimant from holding a job
> for a significant period of time.  An ALJ may explore this factual predicate
> in connection with the claimant's physical diagnosis as well as in the
> ability-to-work determination.  Usually, the issue of whether the claimant
> can maintain employment for a significant period of time will be subsumed
> in the analysis regarding the claimant's ability to obtain employment.
> Nevertheless, an occasion may arise, as in *Watson*, where the medical
> impairment, and the symptoms thereof, is of such a nature that separate
> consideration of whether the claimant is capable of maintaining
> employment is required.

(emphasis added).  *Id*. at 619.

Here, claimant argues that he is unable to maintain employment.  However, the ALJ observed that claimant's condition improved with medication.  (Tr. 16).  This is supported by Dr. Morris' report that his medications provided good analgesic control, and claimant's statements that his pain was 2/10 on medications.  (Tr. 269, 273, 278, 283, 289, 294). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability.  *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Finally, claimant argues that, based the vocational expert's testimony, there are no jobs that he could perform.  [rec. doc. 8, p. 6].  However, it is well established that the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ.  *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985); Falls v. Apfel, 2000 WL 329233, *7 (E.D. La.2000).  Here, the ALJ rejected claimant's testimony based on the evidence of record.  As the ALJ's hypotheticals to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 23rd day of June, 2016, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

20